UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ERICA N. BOMBERRY,

                     Plaintiff,

                     v.

ANDREW SAUL, COMMISSIONER,

                     Defendant.

**Hon. Hugh B. Scott**

**6:18CV6342**

**CONSENT**

**Order**

Before this Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 9 (plaintiff), 13 (defendant Commissioner)). Having considered the Administrative Record, filed as Docket No. 7 (references noted as "[R. __]"), and the papers of both sides, this Court reaches the following decision.

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to disability insurance benefits and/or Supplemental Security Income benefits. The parties consented to proceed before a Magistrate Judge (Docket No. 15, reassignment Order, July 9, 2019).

## PROCEDURAL BACKGROUND

The plaintiff ("Erica Bomberry" or "plaintiff") filed an application for disability insurance benefits on November 5, 2014, for an alleged onset date of March 17, 2014 [R. 11,

13]. That application was denied initially. The plaintiff appeared before an Administrative Law Judge ("ALJ"), who considered the case de novo and concluded, in a written decision dated May 5, 2017 [R. 11], that the plaintiff was not disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner on March 7, 2018, when the Appeals Council denied plaintiff's request for review [R. 1].

Plaintiff commenced this action on May 7, 2018 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 9, 13), and plaintiff duly replied (Docket No. 14). Upon further consideration, this Court then determined that the motions could be decided on the papers.

## FACTUAL BACKGROUND

Plaintiff, a 34-year-old, as of the March 2014 claimed onset date, had a high school education [R. 21] and last worked as a hairstylist (light exertion work) and manicurist (sedentary exertion work) [R. 21]. The ALJ found that, given plaintiff's residual functional capacity, plaintiff could not perform these jobs [R. 21].

Plaintiff claims the following impairments deemed severe by the ALJ: degenerative disc disease in the lumbar spine, status post four surgeries; post-laminectomy syndrome; peripheral neuropathy; asthma; obesity; major depressive disorder; unspecified anxiety disorder; and post-traumatic stress disorder ("PTSD") [R. 13]. Plaintiff was 5' 7" tall and weighed 268 pounds [R. 19, 322, 938 (weight 261 pounds)], with a Body Mass Index of 42.0 [see also R. 938 (BMI of 41)] deemed obese. The ALJ considered plaintiff's obesity in finding her residual functional capacity [R. 19].

Plaintiff also claimed hypothyroidism; numbness and pain in right hand and left arm and hand; history of polysubstance use disorder (intermittent remission) [R. 14]. The ALJ concluded that these impairments were not severe [R. 14].

## MEDICAL AND VOCATIONAL EVIDENCE

Plaintiff had four back surgeries, three prior to onset on 2003, 2010, and 2011, and one in 2015 after onset [R. 17]. The ALJ found that the disorder of the spine Listing 1.04 was not met [R. 14]. The ALJ emphasized that plaintiff had normal range of motion of lumbar or lower extremities, muscle tone and strength [R. 17-18]. In April 2014, plaintiff's treatment notes revealed that she had normal range of motion in her lumbar spine [R. 17, 1288, 1359], but the doctor also noted tenderness [R. 1359]. The ALJ also points out that plaintiff stated during treatment that she lost her job in April 2014 (a month after her onset date) because of transportation issues and her treatment notes showed plaintiff applied for work at two employers [R. 17, 1358]. Plaintiff then told her doctor that she felt that she could not work longer than part-time [R. 1358].

On September 2014 plaintiff was examined and had an antalgic gait and limited range of motion in the lumbar spine [R. 17, 286]. In January 2015, plaintiff was examined by her primary physician, Dr. Margaret Bergin, and presented with tenderness of the lumbar spine, but normal range of motion, normal muscle tone, and normal coordination throughout [R. 17-18, 1074]. Plaintiff stated that she had continuous low back pain and pain with numbness radiating down her legs, and was prescribed Gabapentin and Duloxetine [R. 1070]. She was diagnosed with (among other conditions) lumbosacral disc degeneration, chronic pain, sacral dysfunction [R. 1070]. The ALJ then noted that, in February 2015, plaintiff appeared in no acute distress,

3

with normal posture and strength and only slightly decreased strength of the lower extremities and intact reflexes [R. 18, 416, 945 (Dr. Seth Zeidman)]. Plaintiff complained then, however, that she still had numbness and tingling in her left leg [R. 416]. The ALJ made these findings [R. 18] despite plaintiff having her <u>fourth</u> back surgery in February 2015 [R. 17].

Consultative examiner, Dr. Harbinder Toor examined plaintiff on February 20, 2015, right after her surgery [R. 18, 322]. Dr. Toor observed that plaintiff was not in acute distress, she exhibited an antalgic gait and used a walker [R. 18, 322]. Dr. Toor concluded that plaintiff had moderate to severe limitations standing, walking, sitting in one place because of the recent surgery [R. 324, 18]. The ALJ gave limited weight to Dr. Toor's findings, since the examination occurred one month after the fourth surgery and Dr. Toor advised plaintiff to be reexamined in a month after full recovery from the surgery [R. 18, 324].

In July 2015, Dr. Bergin examined plaintiff and noted plaintiff had normal results [R. 18, 862] with normal range of motion for her neck and musculoskeletal [R. 862]. In February 2016, Dr. Bergin examined plaintiff again and found plaintiff was very limited in walking, standing, and sitting [R. 1034]. Dr. Bergin noted plaintiff had an abnormal gait and musculoskeletal system [R. 1033]. The ALJ gave this opinion little weight since it was inconsistent with the treatment record [R. 19]. In March 2016, plaintiff stated that she could ride an exercise bicycle and wanted to swim when weather got warmer [R. 18, 854]. In November 2016, Dr. Bergin found that plaintiff could no longer work due to chronic low back pain radiating down her left leg [R. 994], that plaintiff could not stand for prolonged periods of time [R. 996].

4

The ALJ gave these contrary medical findings limited weight because their proximity to her fourth surgery [R. 18]. The ALJ did not comment on the November 2016 assessment by Dr. Bergin.

Plaintiff also sought post-surgical treatment from Buffalo Brain & Spine Neurosurgery and Pain Management under Dr. Zeidman [R. 313, 416, 948, 961, 18-19]. Looking at the post-2015 back surgery treatment, Dr. Zeidman examined plaintiff on July14, 2015, noting decreased strength in the bilateral hip flexors, decreased sensation to touch on the left at L4 and L5 [R. 961]. EMG and NCV examinations on July 16, 2015, revealed severe left peroneal neuropathy with significant motor amplitude secondary to axonal loss [R. 952]. Plaintiff saw Dr. Zeidman again on August 20, 2015, where she was uncomfortable sitting in a chair [R. 959], with plaintiff still having pain in her lower back with radiation into her left hip and left lower extremity [R. 958] and sensation decreased on the left at L4 and L5 [R. 959]. On December 21, 2015, plaintiff again saw Dr. Zeidman and her strength was reduced in her left hamstring, quadriceps, and anterior tibials, and sensation decreased on left at L4 and L5 [R. 963]. Plaintiff saw Dr. Seidman on April 12, 2016, who found plaintiff strength decreased in her left hip flexor, hamstring, extensor hallucos longus, and anterior tibialis, again with diminished sensation at L4 and L5 [R. 983]. (Docket No. 9, Pl. Memo. at 19-20.) As for Dr. Zeidman's April 2017 assessment that plaintiff could not sit, stand or walk for less than 2 hours, sit or stand for longer than 15 minutes [R. 1539], the ALJ, however, found Dr. Zeidman's "extreme limitations" to be inconsistent with his own examination findings [R. 19].

The record is replete with plaintiff being treated or recommended for treatment of polysubstance abuse [e.g., R. 322, 866, 854, 996], with Dr. Bergin noting in March 2016 that she

5

had been abstinent from marijuana and cocaine since September 2015 [R. 854]. State agency psychologist Dr. Kristina Luna, Ph.D., diagnosed polysubstance abuse, major depressive disorder, and tested plaintiff and found she had a GAF score of 55 [R. 1044]. Dr. Luna concluded that plaintiff had normal functioning in following, understanding and remembering simple instructions and directions, maintaining attention and concentration for rote tasks, maintaining basic standards for hygiene [R. 20, 1044]. The ALJ gave significant weight to Dr. Luna's opinion, as her assessment was found "consistent with treatment records and the claimant's own reports of controlled symptoms" [R. 20]. Accepting Dr. Luna's opinion, the ALJ found that plaintiff's mental illness was "severe, but does not preclude her ability to work" [R. 20].

The ALJ found that plaintiff had a residual functional capacity to perform sedentary work, except she could occasionally lift 10 pounds, frequently lift 10 pounds; stand and/or walk up to two hours in an 8-hour day; sit for about six hours in 8-hour day; occasionally push or pull 10 pounds; occasionally climb ramps and/or stairs, balance, stoop, kneel, crouch, and crawl; cannot climb ladders, ropes, and scaffolds; avoid concentrated exposure to fumes, odors, dusts, gasses, poor ventilation, and other respiratory irritants; able to understand, remember, and carry out simple tasks; can frequently interact with co-workers, supervisors, and general public; is able to work a low stress work environment; and is able to consistently maintain concentration and focus for up to 2 hours at a time [R. 16].

As noted above, the ALJ found that plaintiff was unable to perform past relevant work as a hairstylist or manicurist [R. 21]. With this capacity and the inability to perform plaintiff's past work, the vocational expert opined that a hypothetical claimant with plaintiff's age, education,

and work experience was able to perform such occupations as a table worker or an addresser (both sedentary jobs) [R. 22]. As a result, the ALJ held that plaintiff was not disabled [R. 22].

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

I.     General Standards—Five Step Analysis

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from returning to his or her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

    (1) whether the plaintiff is currently working;

    (2) whether the plaintiff suffers from a severe impairment;

    (3) whether the impairment is listed in Appendix 1 of the relevant regulations;

    (4) whether the impairment prevents the plaintiff from continuing past relevant work; and

    (5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). When the plaintiff's impairment is a mental one, special "care must be taken to

obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." See Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994). The ALJ must then determine the individual's ability to return to past relevant work given the claimant's residual functional capacity. Washington, supra, 37 F.3d at 1442.

II. Pre-March 2017 Treating Physician Rule

Plaintiff's July 2014 claims predate changes to the treating opinion regulations. The treating physician rule applies to claims filed before March 27, 2017, 20 C.F.R. § 404.1527 (2017); see also 20 C.F.R. § 416.927, such as this one. The current version of the SSA regulations eliminates the treating physician's rule, but for applications filed on or after March 27, 2017, 20 C.F.R. §§ 404.1520c, 416.920c. E.g., Barco v. Comm'r, 330 F. Supp. 3d 913, 918 n.2 (W.D.N.Y. 2018) (Wolford, J.) (treating physician rule applies for claims filed in December 2013); Tuper v. Berryhill, No. 17CV6288, 2018 U.S. Dist. LEXIS 149125, at *2, 8 & n.2 (W.D.N.Y. Aug. 31, 2018) (Payson, Mag. J.) (treating physician rule applies to claim filed May 2013). The treating physician rule provided that

> A treating physician is entitled to controlling weight if it is <u>well supported by clinical and laboratory techniques and is not inconsistent with other substantial evidence</u>. See 20 C.F.R. § 404.1527; see also Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998) (discussing application of the treating physician rule). Additionally, "the Commissioner 'will always give good reasons'" for the weight given to a treating source opinion. Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2); citing 20 C.F.R. § 416.927(d)(2)). While an ALJ may give less than controlling weight to a treating physician's opinion, he or she must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." Halloran,

9

>362 F.3d at 33. "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific. . . .'" Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 406 (6th Cir. 2009) (quoting Social Security Ruling ("SSR") 96-2p, 1996 SSR LEXIS 9 at *12, 1996 WL 374188, at *5 (S.S.A. July 2, 1996) [(rescinded 2017)].

Taillon v. Comm'r, No. 17CV6812, 2019 U.S. Dist. LEXIS 53376, at *5 (W.D.N.Y. Mar. 28, 2019) (Telesca, J.) (emphasis added).

### III. Calculation of Benefits

If plaintiff prevails, this Court either may remand for rehearing and further administrative proceedings or remand for the Commissioner to calculate benefits, 42 U.S.C. § 405(g). For calculation of benefits, the ALJ's error must be so obvious that the Court in effect declares plaintiff to be disabled and remands to calculate amount of benefits, Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980), or where there is no reason to conclude that additional evidence might support the Commissioner's denial of disability, Butts v. Barnhart, 388 F.3d 377, 385-86 (2d Cir. 2004). Where there are gaps in the administrative record or when the ALJ has applied an improper legal standard, remand to develop the record is appropriate rather than for calculation of benefits, Butts, supra, 388 F.3d at 385; Parker, supra, 626 F.2d at 235.

*Application*

In the instant case, the issue is whether the ALJ had substantial evidence to support the decision rendered denying disability coverage. Plaintiff argues that the matter should be remanded because the ALJ rejected treating and examining medical opinions and instead relied upon his lay opinion to conclude that plaintiff could perform sedentary work, despite four back surgeries (Docket No. 9, Pl. Memo. at 1, 16-21). She notes that the ALJ fails to cite any medical opinion in support of the residual functional capacity assessment; the ALJ points to

10

normal findings in the record to reach his conclusions (id. at 19). Next, she faults the ALJ in failing to explain the weight to be given to the opinion of Dr. Luna for the state agency psychological assessment (id. at 21-22), since the ALJ gave significant weight to the doctor's opinion but then did not adopt her assessment of moderate limitations in attending to a routine and maintaining a regular schedule (id. at 21; [R. 1044]; cf. Docket No. 13, Def. Memo. at 20). Plaintiff also seeks remand for calculation of benefits (Docket No. 9, Pl. Memo. at 23).

Defendant argues that the residual functional capacity assessment was determined based on the record as a whole (Docket No. 13, Def. Memo. at 15-22). Defendant contends that the ALJ properly evaluated opinions of treating physicians (id. at 22-23). Defendant also argues that Dr. Luna misunderstood the evaluation form definition of "moderate" in describing plaintiff's capability to attend to routine tasks (id. at 21; cf. [R. 1044]). Defendant rejects a remand for calculation of benefits as not being warranted (id. at 23-24).

I.  Medical Records

The ALJ emphasized that plaintiff had normal range of motion and muscle tone both before and after her fourth back surgery [R. 17-18], discounting the state agency evaluator Dr. Toor because it was rendered within a month of that fourth surgery [R. 18] or other medical sources because they were inconsistent with examination findings or the medical record [R. 18, 19]. Considering the medical record after the fourth back surgery, as indicated by plaintiff (Docket No. 9, Pl. Memo. at 19-20), there was substantial evidence of plaintiff's lower back pain and its radiation down her hip and left leg to support findings by her doctors that she was not capable of prolonged standing, sitting, or walking. The ALJ instead rested upon his assessment

from plaintiff having normal range of motion or muscle tone during various examinations. The ALJ did not address some of the medical evaluations,

Plaintiff's motion for judgment (Docket No. 9) on the pleadings on this ground is **granted**; the case is remanded for further findings of fact and evaluation of the full record by the ALJ.

II.     Psychological Records

Defendant argues that Dr. Luna found that plaintiff could work up to 40 hours a week and then concluded that plaintiff was moderately limited in regularly attending to a routine and maintaining a schedule (Docket No. 13, Def. Memo. at 21; [R. 1045, 1044]). First, Dr. Luna noted that plaintiff could work for up to 40 hours <u>with reasonable accommodations</u>, that is excuse for drug treatment and outpatient therapy [R. 1045-46], with the reason for plaintiff unable to work a full 40-hour week would be her polysubstance abuse and depression [R. 1045]. Second, defendant explains the deficiency in the evaluation form in not having a "mild" limitation option (<u>id.</u>). This Court is not bound by defendant's <u>post hoc</u> rationalization of the ALJ's decisions such as explaining deficiencies in a form, <u>see</u> <u>Michigan v. EPA</u>, 576 U.S. ___, __, 135 S.Ct. 2699, 2710 (2015) ("a court may uphold agency action only on the grounds that the agency invoked when it took the action," citing <u>SEC v. Chenery Corp.</u>, 318 U.S. 80, 87 (1943)); <u>Newbury v. Astrue</u>, 430 F. App'x 732, 16, 18 (2d Cir. 2009) (Docket No. 14, Pl. Reply Memo. at 2-3). The ALJ noted the moderate limitation found by Dr. Luna [R. 20]. The ALJ then concluded that plaintiff's mental illness was severe but not work preclusive [R. 20] with the sole explanation in Dr. Luna's opinion is if plaintiff is afforded reasonable accommodations and the ALJ finding that this conclusion is consistent with the treatment record.

12

Plaintiff counters that the ALJ failed to resolve conflict between the residual functional capacity assessment and Dr. Luna's opinion. The residual functional capacity did not address plaintiff's need for reasonable accommodation for substance abuse and depression treatment and therapy.

If "moderate" was unclear in Dr. Luna's evaluation form, the matter should be considered on remand. Further, the residual functional capacity should be revisited to address plaintiff's need for substance abuse treatment and therapy and the potential of that interfering with her ability to work a 40-hour week without interruptions. On this basis, plaintiff's motion (Docket No. 9) for judgment also is **granted**.

III.     Remand for Calculation of Benefits

The next question is whether the ALJ's errors here were so obvious as to warrant remand for benefits**.** This decision remands this matter for factual re-evaluation of plaintiff's low back and her need for reasonable accommodation for her polysubstance abuse. The record on these two issues was not so clear that this Court, as a matter of law, could decide that plaintiff was disabled and warranted award of benefits. Thus, it is not clear that the ALJ's errors were so obvious that the proper response is to remand for calculation of benefits. Plaintiff's alternative relief of remand merely to calculate benefits is **denied at present**.

## CONCLUSION

For the foregoing reasons, plaintiff's motion (Docket No. 9) judgment on the pleadings is **granted**, and defendant's motion (Docket No. 13) for judgment on the pleadings is **denied**. Thus, the decision of the defendant Commissioner is **vacated and remanded** for further proceedings consistent with the above decision to find additional facts **but not for calculation of**

13

**benefits at this time**, pursuant to sentence four of 42 U.S.C. § 405(g), see Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of the Court shall close this case.

So Ordered.

*s/Hugh B. Scott*

Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
October 4, 2019